Frederico GONZALEZ, Petitioner–Appellant,

v.

Cheryl PLILER, Warden, Respondent–Appellee.

No. 02–55640.

United States Court of Appeals, Ninth Circuit.

Submitted June 2, 2003.*

Filed Aug. 26, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Sung B. Park, Van Nuys, CA, for the petitioner-appellant.

Bill Lockyer, Robert R. Anderson, Pamela C. Hamanaka, Kenneth C. Byrne, and Stephen A. McEwen, Office of the Attorney General of the State of California, Los Angeles, CA, for the respondent-appellee.

Before THOMAS, PAEZ, Circuit Judges, and REED, District Judge.**

THOMAS, Circuit Judge.

California prisoner Frederico Gonzalez appeals the dismissal of his petition for a writ of habeas corpus, arguing that forcing him to wear a stun belt during his trial violated his right of due process. We conclude that an evidentiary hearing is required to resolve this claim and remand the case to the district court.

** The Honorable Edward C. Reed, Jr., United States District Judge for the District of Neva-da, sitting by designation.

## I

A stun belt is an electronic device that is secured around a prisoner's waist. Powered by nine-volt batteries, the belt is connected to prongs attached to the wearer's left kidney region. When activated remotely, "the belt delivers a 50,000–volt, three to four milliampere shock lasting eight seconds." *Hawkins v. Comparet–Cassani*, 251 F.3d 1230, 1234 (9th Cir. 2001). Upon activation of the belt, an electrical current enters the body near the wearer's kidneys and travels along blood channels and nerve pathways. The shock administered from the activated belt "causes incapacitation in the first few seconds and severe pain during the entire period." *Id.* "Activation may also cause immediate and uncontrolled defecation and urination, and the belt's metal prongs may leave welts on the wearer's skin requiring as long as six months to heal." *People v. Mar*, 28 Cal.4th 1201, 124 Cal.Rptr.2d 161, 52 P.3d 95, 103 (2002) (internal citation and quotation marks omitted). Activation of a stun belt can cause muscular weakness for approximately 30–45 minutes and heartbeat irregularities or seizures. *Id.* Accidental activations are not unknown. *See, e.g., United States v. Durham*, 219 F.Supp.2d 1234, 1239 (N.D.Fla.2002) (reporting a survey that showed 11 out of 45 total activations [24.4%] were accidental, but noting the low percentage of accidental activations on general usage).

Stun belts are a method of prisoner restraint, used as an alternative to shackles. As with all forms of physical confinement during trial, the use of stun belts raises a number of constitutional concerns. As the Supreme Court noted in *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the sight of physical

restraints may have a significant effect on the jury and may impede the defendant's ability to communicate with his counsel and to participate in the defense of the case. The use of physical restraints may also "confuse and embarrass the defendant, thereby impairing his mental faculties," and it "may cause him pain." *Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir. 1995) (internal citations and quotation marks omitted). To avoid unnecessary implication of these concerns, the Court concluded in *Allen*, "no person should be tried while shackled and gagged except as a last resort." 397 U.S. at 344, 90 S.Ct. 1057.

Indeed, we have held that, "[g]enerally, a criminal defendant has a constitutional right to appear before a jury free of shackles." *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir.1989) (citing *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir.1985)). Before a court may order the use of physical restraints on a defendant at trial, "the court must be persuaded by compelling circumstances that some measure is needed to maintain security of the courtroom," and "the court must pursue less restrictive alternatives before imposing physical restraints." *Duckett*, 67 F.3d at 748(internal citations and quotation marks omitted). "In all [ ] cases in which shackling has been approved," we have noted, there has been "evidence of disruptive *courtroom* behavior, attempts to escape from custody, assaults or attempted assaults while in custody, or a *pattern* of defiant behavior toward corrections officials and judicial authorities." *Id.* at 749 (emphasis added).

The use of stun belts, depending somewhat on their method of deployment, raises all of the traditional concerns about the imposition of physical restraints. The use of stun belts, moreover, risks "disrupt[ing] a different set of a defendant's constitutionally guaranteed rights." *United States v. Durham*, 287 F.3d 1297, 1305 (11th Cir.

2002). Given "the nature of the device and its effect upon the wearer when activated, requiring an unwilling defendant to wear a stun belt during trial may have significant psychological consequences." *Mar*, 124 Cal.Rptr.2d 161, 52 P.3d at 97. These "psychological consequences," *id.*, cannot be understated. Stun belts, for example, may "pose[ ] a far more substantial risk of interfering with a defendant's Sixth Amendment right to confer with counsel than do leg shackles." *Durham*, 287 F.3d at 1305. We have long noted that "one of the defendant's primary advantages of being present at the trial[ ] [is] his ability to communicate with his counsel." *Spain*, 883 F.2d at 720; *see also Kennedy v. Cardwell*, 487 F.2d 101, 106 (6th Cir.1973) (asserting that restraints confuse mental faculties and thus abridge a defendant's constitutional rights). Stun belts may directly derogate this "primary advantage[ ]," *Spain*, 883 F.2d at 720, impacting a defendant's right to be present at trial and to participate in his or her defense. As the Eleventh Circuit recently observed, "[w]earing a stun belt is a considerable impediment to a defendant's ability to follow the proceedings and take an active interest in the presentation of his case." *Durham*, 287 F.3d at 1306. "The fear of receiving a painful and humiliating shock for any gesture that could be perceived as threatening likely" hinders a defendant's participation in defense of the case, "chill[ing] [that] defendant's inclination to make any movements during trial—including those movements necessary for effective communication with counsel." *Id.* at 1305.

For like reasons, a stun belt may "materially impair and prejudicially affect" a defendant's "privilege of becoming a competent witness and testifying in his own behalf." *Mar*, 124 Cal.Rptr.2d 161, 52 P.3d at 104. In the course of litigation, it is "not unusual for a defendant, or any

witness, to be nervous while testifying." *Id.* at 110. "[I]n view of the nature of a stun belt and the debilitating and humiliating consequences that such a belt can inflict," however, "it is reasonable to believe that many if not most persons would experience an increase in anxiety if compelled to wear such a belt while testifying at trial." *Id.* This "increase in anxiety" may impact a defendant's demeanor on the stand; this demeanor, in turn, impacts a jury's perception of the defendant, thus risking material impairment of and prejudicial affect on the defendant's "privilege of becoming a competent witness and testifying in his own behalf." *Id.* at 104 (quoting *People v. Harrington,* 42 Cal. 165, 168 (1871)).

For these reasons, "a decision to use a stun belt must be subjected to at least the same close judicial scrutiny required for the imposition of other physical restraints." *Durham,* 287 F.3d at 1306 (citations and internal quotation marks omitted). And for these reasons, before a court may order the use of physical restraints on a defendant at trial, "the court must be persuaded by compelling circumstances that some measure [is] needed to maintain the security of the courtroom," and, as noted, "the court must pursue less restrictive alternatives before imposing physical restraints."[1] *Morgan v. Bunnell,* 24 F.3d 49, 51 (9th Cir.1994) (citations and internal quotation marks omitted).

█ In this case, the petitioner was restrained with the belt during jury selection. This decision was apparently made by the bailiff, not the trial judge. Gonzalez was unrestrained during the morning session of the next trial day, a decision apparently made by another bailiff.

But the bailiff assigned to the afternoon trial proceedings forced Gonzalez to wear the stun belt. At that point, defense counsel objected and the following colloquy occurred:

THE COURT: * * * Mr. Lacey, you asked to address the Court regarding the issue of the belt.

MR. LACEY: Yes, your honor. To my knowledge, there hasn't been any type of threat to anybody that would instill any belief that my client was going to create some type of disturbance or act out in court. He didn't have the belt on this morning. The other bailiff made that decision, and he had a belt on last Friday and there was no incident whatsoever. Unless there is a documented incident where there is a true threat other than the charges, I don't believe the belt is necessary, and I would ask the Court to let him proceed without it.

THE COURT: First of all, the belt is not visible to anyone, so it's not a case where he's being singled out in some way the jury would be aware of. Even that being said, what is the reason for the belt, Richard?

THE BAILIFF: I had the belt on him Friday, your honor, and that was my decision because of the Defendant's three strikes, and some problems he had in Department H. This was an "H" case.

THE COURT: He had some problems there?

THE BAILIFF: Yes.

THE COURT: What were you told regarding his problems?

THE BAILIFF: He was being a little uncooperative, and he had a little attitude; that kind of deal.

---

1. California's and the Ninth Circuit's respective physical restraint doctrines are, despite some linguistic distinctions, largely coextensive: Under California law, a court directing

the use of stun belts must determine that a "manifest need" justifies the use. *Mar,* 52 P.3d at 108–09 (citation omitted).

THE COURT: Okay.

THE BAILIFF: And the Bailiff was here this morning. I don't know why he didn't—

THE COURT: I don't either. That's not the point. He had a temporary bailiff here this morning; they were patrol deputies, weren't they? They weren't experienced courtroom deputies. Very well, the objection is overruled.

That was the entirety of the examination on the courtroom deployment of the potentially debilitating restraint. Gonzalez was forced to wear the stun belt for the remainder of the trial, including the period during which he was testifying.

■ The record clearly demonstrates that the trial court failed to adhere to the relevant constitutional standards in forcing the defendant to wear the restraint. First, the decision to force the defendant to wear the stun belt during trial was not made by the Court in the first instance; it was made by correctional officers. The use of physical restraints is subject to close *judicial*, not law enforcement, scrutiny. It is the duty of the trial court, not correctional officers, to make the affirmative determination, in conformance with constitutional standards, to order the physical restraint of a defendant in the courtroom. This requirement was not satisfied in this instance.

■ Second, the trial court did not determine "by compelling circumstances that some measure [wa]s needed to maintain security of the courtroom." *Id.* The record is completely devoid of any action taken by the defendant in the courtroom that could be construed as a security problem. The only basis for the trial court's decision to force petitioner to don the belt was that the bailiff, in a fashion somewhat reminiscent of a Strother Martin character,[2] had reported that the petitioner had "showed a

little attitude" and "a little lack of cooperation." None of the articulated reasons provides an adequate basis for depriving a defendant of his constitutional right to attend trial free of physical restraints. Gonzalez did not create any disturbance at trial. He did not try to escape. He made no threats. Despite this, the trial court did not even hold an evidentiary hearing before ordering the use of the belt. This procedure did not satisfy the safeguards required by the Constitution. As the California Supreme Court stated in *Mar:*

> [W]hen the imposition of restraints is to be based upon conduct of the defendant that occurred outside the presence of the court, sufficient evidence of that conduct must be presented on the record so that the court may make its own determination of the nature and seriousness of the conduct and whether there is a manifest need for such restraints; the court may not simply rely upon the judgment of law enforcement or court security officers or the unsubstantiated comments of others.

52 P.3d at 107. The trial court comported with none of these required procedures.

Further, the trial court made no attempt to "pursue less restrictive alternatives before imposing physical restraints." *Morgan,* 24 F.3d at 51. The trial court simply found that "the belt [was] not visible to anyone," so Gonzalez was not "being singled out in some way the jury would" recognize. No alternatives were discussed or considered, and the trial proceeded with the stun belt affixed to the defendant, even during his testimony. As a predicate matter, then, the trial court clearly failed to meet even minimal constitutional standards applicable to the use of physical restraints in the courtroom.

---

2. *See Cool Hand Luke* (Warner Bros. 1967).

## II

■ The fact that constitutional error occurred does not end our examination. Except in certain circumstances, to find relief on collateral review, a federal habeas petitioner must show that the error resulted in actual prejudice. *See United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Here, the district court concluded that the petitioner was not entitled to relief because he did not establish that prejudice attached to the constitutional error.

■ As we have noted, "[s]hackling, except in extreme forms, is susceptible to harmless error analysis." *Duckett*, 67 F.3d at 749. In the habeas context, this means that the petitioner must show that the physical restraints "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). "If we are in 'grave doubt' whether the error affected the verdict, the error is not harmless." *Duckett*, 67 F.3d at 749(quoting *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)).

■ Gonzalez claims that he was prejudiced by the imposition of the belt because he was not able to: (1) participate fully in his defense; (2) communicate sufficiently with his counsel; and (3) concentrate adequately on his testimony because of the stress, confusion and frustration over wearing the belt. He also alleges that there is a question as to whether any of the jurors learned of the use of the stun belt.

No evidentiary hearing was held on any of these claims in either state or federal court. In this case, as in *Duckett*, the trial court summarily overruled the petitioner's objection. Thus, the extent of any prejudice is unknown. The only determination made by the trial court was that the stun belt was "not visible to anyone." The trial court did not make any findings about whether the activating device was visible to the jury.

Under applicable federal habeas law, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence or unless based on an unreasonable evidentiary foundation. *See* 28 U.S.C. §§ 2254(d)(2) & 2254(e)(1) (1999); *Zichko v. Idaho*, 247 F.3d 1015, 1019 (9th Cir.2001). Thus, we must accept the trial court's finding that the stun belt was not visible to the jury. There are no findings as to any of the other claims of prejudice, however, and this dearth of findings is significant.

■ The question in this case is not whether Gonzalez's habeas petition should be granted outright, but, rather, whether Gonzalez is entitled to an evidentiary hearing. "A habeas petitioner must meet two conditions to be entitled to a federal evidentiary hearing: He must (1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." *Belmontes v. Woodford*, 335 F.3d 1024, 1053–54 (9th Cir.2003). "A petitioner who meets these conditions must receive a hearing." *Id.* (citing *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)); *see also United States v. Navarro–Garcia*, 926 F.2d 818, 822(9th Cir.1991) ("Unless the court is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial, an evidentiary hearing must be held.").

The right to an evidentiary hearing when these prerequisites have been satisfied also applies to the question of prejudice. *Rhoden v. Rowland*, 10 F.3d 1457,

1460 (9th Cir.1993); *see also Dyas v. Poole,* 317 F.3d 934, 937 (9th Cir.2003). Gonzalez expressly requested an evidentiary hearing in this case, and the record is completely devoid of any evidence concerning the effect the belt had on the defendant's ability to communicate with his lawyer, on his ability to assist in his own defense, or on his ability to testify on his own behalf. There is no record of whether the jury was aware of the use of the stun belt from means other than observing the defendant. Thus, consistent with our prior case law, we must remand to the district court for an evidentiary hearing on the issue of prejudice. *See Duckett,* 67 F.3d at 749; *Rhoden,* 10 F.3d at 1460. We do not, of course, prejudge the outcome of that inquiry. *Cf. Woodford v. Visciotti,* 537 U.S. 19, 123 S.Ct. 357, 359–60, 154 L.Ed.2d 279 (2002).

## III

■■■ The Warden argues that petitioner is barred from recovery under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In relevant part, *Teague* holds that new rules of criminal procedure are not applicable on habeas review. *Id.* at 301, 109 S.Ct. 1060. Under *Teague,* however, a new rule of criminal procedure is retroactive if it "places certain kinds of primary, private individual conduct beyond the power of criminal lawmaking authority to proscribe," or if the rule "requires the observance of those procedures that ... are implicit in the concept of ordered liberty." *Id.* at 311, 109 S.Ct. 1060 (citations and internal quotation marks omitted).

■■■ The question presented here is whether restrictions on the use of stun belts constitutes a "new rule" as that phrase is used in *Teague.* If the rule a habeas petitioner seeks to assert can be "meaningfully distinguished from that established by binding precedent at the time

his state court conviction became final," the rule is a "new" one, typically inapplicable on collateral review. *Wright v. West,* 505 U.S. 277, 304, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (O'Connor, J., concurring); *see also Torres v. Prunty,* 223 F.3d 1103, 1110 (9th Cir.2000) (observing that the "new rule" test is an objective one). If, by contrast, the rule cannot be so distinguished, the rule is not of "new" ilk and is, as a result, applicable in the habeas context. *Torres,* 223 F.3d at 1110; *see Graham v. Collins,* 506 U.S. 461, 469, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (requiring courts assessing a rule's "newness" to survey their own case law for guidance); *Bailey v. Newland,* 263 F.3d 1022, 1030 (9th Cir.2001).

■■■ As we have noted, the Supreme Court has long imposed constitutional limits on the use of physical restraints at trial. *See Allen,* 397 U.S. at 344, 90 S.Ct. 1057. The rule of *Allen* is one of general application; there is nothing in *Allen* that confines it to a particular type of restraint. *See, e.g., Spain,* 883 F.2d at 720–23. Application of a broad rule limiting the use of physical restraints is faithful to *Allen*'s animating principles and logic. *See Durham,* 287 F.3d at 1306 ("[S]tun belts plainly pose many of the same constitutional concerns as do other physical restraints...."). If we were to adopt the Warden's theory, a new rule of criminal procedure would obtain every time there was a technological advance in the design of prisoner restraints. The form of the physical restraint, however, is irrelevant to the application of the constitutional standards. It matters not whether the restraint takes the form of handcuffs, gags, leg shackles, ropes, straight jackets, stun belts, or force fields. The relevant constitutional questions are identical and dictated by a long line of case law. In short, the applicable rule in this case was "dictated

by precedent existing at the time [Gonzalez's] conviction became final." *See Bailey,* 263 F.3d at 1030 (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. 1060). Thus, it is not barred by *Teague.*

### IV

We vacate the judgment of the district court and remand with instructions to conduct an evidentiary hearing on the issue of prejudice.

REVERSED AND REMANDED.