**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Clayton WAAGNER, Defendant–
Appellant.**

No. 02–3953.

United States Court of Appeals,
Sixth Circuit.

July 14, 2004.

Robert A. Behlen, Jr., U.S. Attorney's Office, Cincinnati, OH, for Plaintiff–Appellee.

W. Kelly Johnson, Asst. F.P. Defender, Office of the Federal Public Defender, Cincinnati, OH, for Defendant–Appellant.'

Before: DAUGHTREY and COLE, Circuit Judges; and POLSTER, District Judge.*

## OPINION

COLE, Circuit Judge.

Defendant–Appellant Clayton Lee Waagner was convicted by a jury on five

* The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

firearms charges and possession of a stolen vehicle. On appeal, Waagner contends that the district court erred: (1) by denying his motion to assert a necessity defense at trial; (2) by denying his motion for a mistrial based upon the prosecution's purported withholding of *Brady* material; (3) by deciding to impose a physical restraint—a stun belt—upon him during trial; and (4) by denying his motion to sever the issues related to the firearms charges from the stolen motor vehicle charges. For the reasons set forth below, we **AFFIRM** Waagner's conviction.

## I. BACKGROUND

On December 5, 2001, Waagner, a fugitive from justice and the subject of a nationwide manhunt, was arrested by officers of the Springdale, Ohio police department as he left a Kinko's Copy Center.[1] Waagner was an escaped convict, who was wanted in connection with threatening abortion clinics in an effort to end the practice of late-term abortions. At the time of his arrest, Waagner possessed a Kahr Arms Model K40, semi-automatic pistol on his person. He also possessed a Winchester Model 70, 22–250 caliber rifle in the trunk of a stolen 1999 Mercedes Benz.

After being informed of his *Miranda* rights, Waagner agreed to an interview with the Federal Bureau of Investigation, the United States Marshal's Service, and the United States Postal Service. During this meeting, Waagner informed the representatives in attendance that he had stolen a pistol from a gun shop in Pennsylvania. He also informed them that he had stolen several vehicles during his time at large,

including the Mercedes Benz in his possession at the time of his arrest.

The grand jury returned a six-count indictment against Waagner, indicting him for: (1) being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); (2) being a fugitive from justice in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(2) and 924(e)(1); (3) knowingly possessing a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); (4) being a convicted felon in possession of a stolen firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); (5) being a fugitive from justice in possession of a stolen firearm in violation of 18 U.S.C. §§ 922(g)(2) and 924(e)(1); and (6) possessing a stolen motor vehicle in violation of 18 U.S.C. § 2313(a). Waagner was tried and convicted by a jury on all counts. On August 15, 2003, Waagner was sentenced to 235 months on Counts One, Two, Four and Five, and 120 months on Counts Three and Six, to be served concurrently and consecutive to the sentence imposed by the U.S. District Court for the Central District of Illinois for a prior conviction of being a felon in possession of a firearm.

## II. ANALYSIS

### A. Necessity Defense

■ Waagner contends that the district court erred by failing to instruct the jury regarding his necessity defense. Waagner opposes the practice of late-term abortions. He argues that his attempts to eliminate this practice should have warranted the submission of evidence related to a "necessity defense."

1. In 1979, Waagner was convicted of aggravated burglary in both Atlanta, Georgia and in Cleveland, Ohio. In 1992, Waagner was convicted of attempted robbery in Eaton, Ohio. In 2000, Waagner was convicted of posses- sion of a firearm and possession of a stolen vehicle in Illinois. On February 22, 2001, while awaiting sentencing on the 2000 conviction, Waagner escaped from the DeWitt County Jail.

A district court's decision to bar a necessity defense is reviewed *de novo*. *United States v. Springer*, 51 F.3d 861, 864 (9th Cir.1995). A decision on whether a defendant can proffer a necessity defense is guided by this Court's precedent in *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir.1990), which requires that the evidence show that: (1) the defendant was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; and (5) the defendant did not maintain the illegal conduct any longer than absolutely necessary. *See also United States v. Newcomb*, 6 F.3d 1129, 1134 (6th Cir.1993).

A defendant bears the burden of introducing some evidence to trigger consideration of the necessity defense. Moreover, this Court has held that the "justification defense for possession of a firearm by a felon should be construed very narrowly." *Singleton*, 902 F.2d at 472. The district court does not err in refusing to instruct the jury on the necessity defense where the evidence could not support a verdict based upon it. *Id.* at 473. Waagner asserts that there was sufficient evidence of each element of the *Singleton* standard to justify a jury instruction on the necessity defense.

We have held that a criminal defendant asserting a necessity defense "must have no alternative—either before or during the event—to avoid violating the law." *Id.* at 473. The district court concluded that Waagner had failed to present any evidence that might suggest that he was in an unavoidable position either prior to or during the period of his possession of firearms. As the district court pointed out in its order denying Waagner's motion, he did not produce evidence asserting that he had called the police and been denied their assistance in preventing late-term abortions. There is no evidence in the record that Waagner sought alternative means of preventing the actions that he deemed to be an imminent threat to the unborn fetuses.

Further, our sister circuits have rejected defendants' assertions of the necessity defense in this context precisely because they have concluded that opponents of abortion have legal methods with which they can either encourage women not to have abortions or act to completely outlaw the practice of late-term abortions. *See United States v. Turner*, 44 F.3d 900 (10th Cir. 1995) (rejecting abortion protester's necessity defense citing availability of other legal alternatives to blocking access to an abortion clinic); *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342 (3rd Cir.1989) (same).

Waagner has failed to make a sufficient evidentiary showing to justify a jury instruction on the necessity defense. Accordingly, the district court did not err by refusing to so instruct the jury.

B. *Brady* Violation

■ Waagner contends that the district court erred by denying his motion for a mistrial on the ground that the prosecution's failure to turn over to him potentially exculpatory evidence prior to trial, as required by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violated his due process rights.

Specifically, Waagner asserts that the prosecution's failure to inform him of an unsuccessful pretrial identification, during which the store clerk from the Pennsylvania gun shop was unable to identify Waagner from a photo line-up. Waagner contends that the prosecution's failure to turn over this material prevented him from either adequately preparing for cross-examination or a pretrial motion to challenge the subsequent in-court identification. We review this issue *de novo*. *United States v. Tarwater*, 308 F.3d 494, 515 (6th Cir.2002).

Pursuant to *Brady* and its progeny, evidence is material for the purpose of sustaining a claim of a *Brady* violation if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Miller*, 161 F.3d 977, 986–87 (6th Cir.1998). In reviewing a *Brady* claim, the reviewing court is required to reverse if the effect of the evidence suppressed by the government is to undermine confidence in the outcome of the defendant's trial. *Id.*

The outcome of the unsuccessful pretrial identification constituted *Brady* material, as it was potentially exculpatory evidence. The central question, then, is whether Waagner's being informed of the unsuccessful pretrial witness identification for the first time at trial constitutes a *Brady* violation. This Court has held that *Brady* "generally does not apply to delayed disclosure of exculpatory information, but only a complete failure to disclose." *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir.1994). In *Bencs*, we rejected a defendant's assertion that the prosecution's failure to produce exculpatory statements by witnesses until immediately prior to their trial testimony constituted a *Brady* violation. At trial, Waagner was able to cross-examine the gun store clerk and impeach his testimony on the basis that he had

been unable to identify Waagner during the pretrial photo identification. The district court gave Waagner the opportunity to cross-examine the witness on it "as much as he wants."

■ Nevertheless, even if we were to conclude that the prosecution violated Waagner's due process rights under *Brady* by its belated disclosure, the suppression of the eyewitness testimony would not have affected the trial's outcome. Waagner had admitted to Tracey Heinlein and James Fitzgerald, special agents with the FBI; Greg Fiorina, an official with the United States Postal Service; and Jeff Niemer, of the United States Marshal's Service, that he had stolen a semi-automatic pistol from a gun shop in Pennsylvania. This admission was attested to by Tracey Heinlein at trial. Waagner did not impeach Heinlein's statement upon cross-examination. Jason Wojdylo, a deputy United States Marshal, also testified that Waagner admitted to having stolen a handgun from a gun shop in Pennsylvania. Moreover, the gun shop clerk testified that the serial number on the gun found in Waagner's possession matched that of the gun stolen from the shop. Therefore, even the suppression of the eyewitness testimony that placed Waagner in the store from which the gun was stolen would not have affected the outcome of the trial.

While Waagner's closing statement does not qualify as testimony that should have been given weight by the jury, he stated, "I said I stole the guns, the one gun, the handgun. I have never ever, ever denied that." Again, while this does not amount to an admission of guilt, it clearly underscores Waagner's intention not to contest the evidence produced to support the prosecution's claim that had stolen the handgun that he possessed at the time of his arrest. On that basis, it must be concluded that Waagner's conviction was not ma-

terially affected by the prosecution's failure to disclose this particular exculpatory evidence prior to trial.

## C. Imposition of In–Court Restraint

■ Waagner appeals the district court's decision to impose an in-court restraint—a stun belt—upon him during the trial. We review a district court's decision to restrain a criminal defendant under an abuse of discretion standard. *Kennedy v. Cardwell*, 487 F.2d 101, 110 (6th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

Imposing a physical restraint on a criminal defendant during trial implicates a defendant's right to a fair and impartial trial. Physical restraints compromise the physical semblance of innocence; they may undermine the defendant's ability to participate in his own defense, and they impair the "dignity and decorum of the judicial process" itself. *Id.* at 106. Nevertheless, a district court has some discretion regarding whether to impose physical restraints upon a defendant at trial, as it is in the best position to ensure the safety of the proceedings in light of the courtroom's construction and in light of the particular circumstances of the defendant.

In *Kennedy*, we articulated four factors to be considered by a district court in its determination of whether to impose physical restraints on a defendant at trial. They are: (1) the defendant's record, his temperament, and the desperateness of his situation; (2) the state of both the courtroom and the courthouse; (3) the defendant's physical condition; and (4) whether there is a less prejudicial but adequate means of providing security. *Id.* at 110–11.

Although this case involves a district court's decision to impose a stun belt rather than shackles, the same fundamental issues are implicated in the decision of the district court to restrain Waagner through the use of a stun belt. *United States v. Durham*, 287 F.3d 1297, 1306 (11th Cir. 2002) ("[S]tun belts plainly pose many of the same constitutional concerns as do other physical restraints, though in somewhat different ways.") Several circuits have noted that the imposition of stun belts on defendants at trial more severely impacts those rights that are impacted by the imposition of shackles—including the right to participate in one's own defense. *Gonzalez v. Pliler*, 341 F.3d 897, 897–901 (9th Cir.2003) (noting that the severe physical effects of a stun belt's activation could seriously impair a defendant's ability to testify on her behalf or otherwise participate in her own defense); *Durham*, 287 F.3d at 1306. For those reasons, our sister circuits have held that "a decision to use a stun belt must be subjected to at least the same close judicial scrutiny required for the imposition of other physical restraints." *Gonzalez* at 901.

The district court noted that at the time of his arrest Waagner was a fugitive from justice, having escaped from prison. Further, the district court noted that having already been sentenced to a significant prison term, Waagner was in a desperate position, making the likelihood of an attempted escape all the more possible. The district court also concluded that Waagner had no physical limitation that would prohibit his escape. The district court further determined that there was no less prejudicial alternative to the use of a stun belt. In making this finding the district court concluded that the presence of armed guards around Waagner would substantially compromise the physical indicia of innocence, and that shackling was impossible because Waagner was acting as his own attorney at trial. Finally, the district court noted that "the courtroom's facilities

[were not] equipped in a way that would eliminate the risk of escape."

We thus conclude that the district court did not abuse its discretion by imposing a stun belt on Waagner at trial. *See Gonzalez v. Pliler*, 341 F.3d 897 (9th Cir.2003) (finding that a district court had abused its discretion where it had not made an independent determination of the need for the imposition of stun belts during trial); *United States v. McKissick*, 204 F.3d 1282 (10th Cir.2000) (upholding a district court's imposition of a stun belt restraint on a criminal defendant during trial involving gang members on the basis that it suspected that other gang members might attempt to disrupt the trial).

### D. Severance of Indictment for Auto Theft

■ Waagner asserts that the district court erred in denying his motion to sever the portions of the indictment related to the felon-in-possession charges (weapons charges) from those portions related to the possession of the stolen vehicle. Waagner argues that the trial court's decision to try him for both the felon-in-possession and stolen vehicle charges unfairly prejudiced him at trial. We review the district court's decision under an abuse of discretion standard. *United States v. Jacobs*, 244 F.3d 503, 506 (6th Cir.2001).

There is some support for the position that a decision not to sever charges based upon the defendant's status as a felon can be violative of a defendant's right to a fair trial under the Sixth Amendment. *See United States v. Jones*, 16 F.3d 487 (2nd Cir.1994) (reversing the conviction of a criminal defendant on armed bank robbery because defendant was unfairly prejudiced by the attachment of a felon-in-possession charge); *United States v. Holloway*, 1 F.3d 307, 312 (5th Cir.1993) ("[B]y failing to sever the weapons charge [from] the robbery charges, the jury emphatically was told that [the defendant] was a bad and dangerous person 'by his very nature,' and that a felon who carried a gun was just the sort of character who was most likely to have committed the robberies charged in the indictment."); *United States v. Daniels*, 770 F.2d 1111, 1118 (D.C.Cir.1985) ("A side consequence of the felon-in-possession law has been to provide federal prosecutors with a powerful tool for circumventing the traditional rule against introduction of other crimes evidence. Whenever an ex-felon is charged with committing a crime involving the use of a gun, prosecutors may inform the jury of the defendants' prior convictions merely by taking the time to include a charge of firearms possession.").

These courts have also emphasized the degree of connection between the felon-in-possession charges and the other charged offense. A key justification for concluding that the prosecution was attempting to bootstrap felon-in-possession charges in an attempt to taint defendants in the prosecution of related charges was the court's recognition of the tenuousness between the offenses. Fed.R.Crim.P. 8(a) specifically allows offenses that "constitute parts of a common scheme or plan" to be charged in the same indictment. Here, the stolen vehicle is a part of the same overall scheme undertaken by Waagner to intimidate abortion providers and their employees. It was not tenuously connected to his indictment for possession of weapons.

■ Moreover, even if we were to conclude that Waagner was prejudiced by the trial court's decision not to sever the stolen car charge, such error was harmless. As stated with respect to the *Brady* material, Waagner admitted to no fewer than four federal law enforcement agents that he had stolen the Mercedes from a dealership in North Dakota. Two agents testified to

this fact at trial. This testimony was not impeached by Waagner on cross-examination. Therefore, even if we were to exclude the evidence of Waagner's prior felony convictions, substantial evidence would support his conviction for knowingly possessing a stolen vehicle. *See United States v. Carnes*, 309 F.3d 950, 958 (6th Cir.2002) (upholding conviction despite concluding that the trial court's denial of motion to sever was in error on the ground that there was "unambiguous and overwhelming" evidence of defendant's guilt).

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court in all respects.