In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-1312

JOHN M. STEPHENSON,

*Petitioner-Appellant*,

*v.*

RON NEAL, Superintendent, Indiana State Prison,

*Respondent-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:07-cv-00539-TLS — **Theresa L. Springmann**, *Chief Judge*.

———————————

ARGUED JUNE 27, 2017 — DECIDED AUGUST 4, 2017

———————————

Before BAUER, POSNER, and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. Late one night in March 1996, three persons riding in a truck in southern Indiana were killed by gunshots and knives. Shortly afterward John Stephenson was charged in an Indiana state court with the murders and related crimes including theft (in which he was joined by a man named Dale Funk) of ammunition earlier in the day for the type of assault rifle used in the murder from a trailer in

which one of the victims was staying; spent shell casings at the site of the murder matched those taken from the trailer. Stephenson and Funk had gone target shooting that day.

Stephenson was tried by a jury and convicted in a trial that lasted almost eight months. A penalty hearing was then held, but lasted only a day at the end of which the jury recommended the death penalty; five weeks later the judge sentenced the defendant to death. The state supreme court affirmed the conviction and death sentence, and also denial of postconviction relief. *Stephenson v. State*, 742 N.E.2d 463 (Ind. 2001); 864 N.E.2d 1022 (Ind. 2007). Stephenson then sought habeas corpus in federal district court and prevailed, the judge ruling "that he had been denied effective assistance of counsel during both the guilt and penalty phases of the trial," and so she vacated both the conviction and the sentence, "because his counsel had failed to object to the state's making him wear a stun belt in the courtroom" and "in the state postconviction proceedings, four jurors said they were aware that he was wearing a stun belt." *Stephenson v. Wilson*, 619 F.3d 664, 666 (7th Cir. 2010).

The respondent—the superintendent of the Indiana state prison in which the defendant is being held—appealed and we reversed and remanded on the limited ground that Stephenson may not have been prejudiced by wearing the stun belt in the guilt phase of the litigation. We concluded that "the question of prejudice from Stephenson's having been required to wear the stun belt at the penalty hearing will require the further consideration of the district court on remand." *Stephenson v. Wilson*, 619 F.3d at 674.

On remand, the district judge ruled that Stephenson had not been prejudiced by his lawyer's failure to object to his

having to wear a stun belt visible to jurors in the penalty phase of the litigation because already in the guilt phase the jury had decided that the defendant, having (the jury found) murdered three people at the same time, was a dangerous person.

Although in this appeal Stephenson's lawyer mounts a vigorous challenge to both the murder conviction and the death sentence, the first challenge fails. Not that there isn't evidence that *might* have convinced a jury to acquit. A late-appearing witness named Chad Adams gave deposition testimony in 2004 (eight years after the murders) inculpating a friend of Stephenson's named Brian Mossberger, whom Adams was visiting on the night of the murders. Adams testified that he saw Mossberger leave his house to chase a truck, and that when Mossberger returned Adams overheard him say "I got that mother fucker" (or "them mother fuckers"— he said both things in his deposition) while washing blood off his hands, causing Adams to infer that Mossberger might have killed one or more of the victims. But contrary to Adams, another friend of Stephenson's—Funk, mentioned earlier—gave detailed testimony at Stephenson's trial to having witnessed Stephenson shoot up the truck carrying the three murder-victims-to-be with his assault rifle, then approach the truck on foot and enter it, and it was in the truck that the victims were stabbed. Mossberger testified that Stephenson after returning with Funk held up a bloodied knife and said "Jay, Kathy, and Brandy are no more."

The evidence we've just been recounting is, however, problematic. Adams's testimony was contradicted by another witness in the postconviction proceeding, Donald Goodman, while Mossberger and Funk each suffer from credibil-

ity issues by virtue of being potential suspects themselves in the murders. Forensic testing revealed that the bullet wounds were from shots that had been fired from Stephenson's assault rifle, but the rifle was in Mossberger's possession after the crime.

Taken together, the evidence old and new, while rife with inconsistencies, fails to establish Stephenson's innocence. See *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Stephenson's other ground for challenging his conviction, that he was denied an impartial jury, also falls short. He points to two instances of juror misconduct: the jury foreman's acquaintance with the sister of one of the victims, and two jurors' discussion (overheard by two other jurors) of Stephenson's participation in a bar fight prior to the murders. Although the Indiana Supreme Court acknowledged the misconduct, it also found after a reasonable inquiry that Stephenson was not prejudiced at the guilt phase by either instance of misconduct, and we have no basis to overturn that conclusion, considering that the jury was faced with nearly eight months' worth of evidence and that nothing in the affidavits or depositions of nine jurors compiled during the state postconviction proceeding suggests that these two occurrences were likely to have altered the outcome.

The district judge was thus on sound ground in refusing to order a new trial for Stephenson, but we disagree that the penalty phase of the litigation was handled properly. We signaled our concern when in reversing and remanding the district judge's previous ruling we asked her to consider whether the defendant had been prejudiced by his lawyer's failure to object to his having to wear a stun belt visible to

jurors *during the penalty phase*. She said no, and we think that a mistake.

A stun belt is a belt used to restrain prisoners, often in courtrooms where a prisoner who acts up can frighten and even injure jurors, the judge, the lawyers, and spectators. So an officer is authorized to send an electric shock to a box on the stun belt that contains electrical wires, should the prisoner become violent or otherwise disrupt the proceeding; the shock disables the prisoner from acting up. The box on Stephenson's belt was on his back under his shirt yet visible to the jurors as a bulge.

No shock was sent during the trial, including the penalty phase, because Stephenson never acted up. Yet seeing the bulge and recognizing it as the action part of a stun belt the jurors may have thought it evidence that Stephenson was violent and unpredictable—evidence confirming the jury's decision to convict and encouraging it to sentence such a person, already found to be a murderer, to death. It's also possible that wearing the stun belt affected Stephenson's demeanor and appearance throughout the trial—made him nervous and fearful, which jurors might interpret incorrectly as signs of guilt. In a decision barring the future use of stun belts in Indiana courtrooms, the Indiana Supreme Court noted that a stun belt can compromise a defendant's participation in a trial because it "relies on the continuous fear of what might happen if the belt is activated for its effectiveness." *Wrinkles v. State*, 749 N.E.2d 1179, 1194–95 (Ind. 2001). The stun belt's manual brags that "the psychological impact [of the stun belt] becomes a predominant factor of and for optimum control."

The government argues that Stephenson can't have been prejudiced by the stun belt, because the most important factor in sentencing is the crime itself, which was a trio of murders that the jury found Stephenson guilty of. But weighing against this argument is the brevity of the penalty phase, which gave salience to the stun gun's potential negative effect on the jury's assessment of Stephenson's character and may thus have influenced the jury's voting to sentence him to death. See *Strickland v. Washington*, 466 U.S. 668, 695–96 (1984).

There is no evidence that the defendant was at all likely to act up at the penalty phase of his trial, or at any other phase. He's been in prison for twenty years now, and there is no suggestion that he has behaved violently during that period, and certainly he has not in any of his subsequent court appearances. The stun belt thus signaled to anyone familiar with Stephenson's history nothing to suggest that now in his 50s he continued to pose the same danger as, the jury was entitled to and did find, he had done by committing triple murders one night in 1996. Yet we know that four jurors were aware of the stun belt, and do not know what if anything they told the other jurors and therefore what role discovery of the stun belt may have played in the jury's determination to sentence him to death. This should not be surprising, as the instructions accompanying the stun belt warn users not to attempt to hide it under clothing, because "the belt is of significant bulk so as *not to* remain undetected if worn beneath clothing" (emphasis in original). The fault is certainly not Stephenson's; it's his lawyer's, for failing to object to his client's having to wear a stun belt, given the absence of any reason to think his client would go berserk in

the courtroom. See *Wrinkles v. Buss*, 537 F.3d 804, 813–15 (7th Cir. 2008).

The possibility that the defendant's having to wear the stun belt—for no reason, given that he had no history of acting up in a courtroom—contaminated the penalty phase of the trial persuades us to reverse the district court's denial of Stephenson's petition for habeas corpus and to remand with directions to vacate his sentence. After the completion of these proceedings, Indiana may choose to seek the death penalty anew and hold a new penalty hearing before a jury without Stephenson wearing the stun belt, or to seek a lesser sentence and hold a penalty hearing before a judge. The court's refusal to vacate his conviction, however, is affirmed.