JORDAN, Circuit Judge, concurring in part and dissenting in part:
I concur in the majority opinion with one exception, and that exception is Mr. Whatley's ineffective assistance of counsel claim related to shackling. On that claim, I respectfully dissent.
At the sentencing phase of his capital trial, Mr. Whatley was called by his counsel to testify. He stood up from the defense table and shuffled to the witness stand, revealing to the jury that he was restrained by leg shackles. The shackles had not been visible to the jury during the guilt phase of the trial because a curtain had been draped over the defense table to shield them from view. The visible shackles proved to be only the beginning of the problem.
During cross-examination, the prosecutor asked Mr. Whatley to come down into the well of the courtroom. Mr. Whatley complied, with the shackles around his ankles yanking his legs together as he moved. The prosecutor then handed Mr. Whatley a toy gun and said, "Now, this is not the type of gun you had that day. I hope you'll understand why I don't want to give you a real gun." Mr. Whatley grasped the prop as the jury looked on. The prosecutor then instructed Mr. Whatley to re-enact his crime (the fatal shooting of a store owner during an armed robbery). As the demonstration unfolded, Mr. Whatley was repeatedly told to point the gun at the prosecutor, who was simultaneously directing the scene and playing the role of the murder victim.
The next day, the jurors who observed this demonstration were asked to decide whether Mr. Whatley should be sentenced to death. In his closing argument, the prosecutor-with the image of Mr. Whatley re-enacting the murder fresh in everyone's mind-harped on Mr. Whatley's future dangerousness and urged the jury to impose the death penalty. The jury did as he requested, sentencing Mr. Whatley to death.
I part company with the majority on the prejudice prong of Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In my view, the Georgia Supreme Court's ruling-that the sight of Mr. Whatley re-enacting the murder while shackled was not prejudicial-constituted an unreasonable application of clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1).
The Georgia Supreme Court erred in three critical ways. First, it failed to conduct *1189 the prejudice inquiry with proper regard for the inherent harm that results from visible shackling. Second, it did not take into account the fact that Mr. Whatley wore the shackles not just while walking to the witness stand, but while re-enacting the murder in front of the jury with the prosecutor playing director and victim. And third, it failed to analyze how the shackles may have affected the jurors' views regarding Mr. Whatley's alleged propensity for future violence, one of the major themes of the prosecutor's closing argument.
I
The Supreme Court has long considered the use of visible physical restraints (like handcuffs or leg irons ) on criminal defendants to be an inherently prejudicial practice. See Deck v. Missouri , 544 U.S. 622, 626-29, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) ; Holbrook v. Flynn , 475 U.S. 560, 568-69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) ; Illinois v. Allen , 397 U.S. 337, 343-44, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Because visible restraints inevitably imply that a defendant is a dangerous person, they are justified only by a particularized and essential state interest and should only be used as "a last resort." Allen , 397 U.S. at 344, 90 S.Ct. 1057. For decades, we have similarly viewed the risk of prejudice posed by visible restraints to be so serious that due process secures a defendant the right to contest their necessity. See Elledge v. Dugger , 823 F.2d 1439, 1451-52 (11th Cir.) (defendant restrained at sentencing phase), opinion withdrawn in part , 833 F.2d 250 (11th Cir. 1987) ; Zygadlo v. Wainwright , 720 F.2d 1221, 1223-24 (11th Cir. 1983) (defendant restrained at guilt phase). The Georgia Supreme Court has come to the same conclusion. See Allen v. State , 235 Ga. 709, 221 S.E.2d 405, 409 (1975) (explaining that restraints should not be used on a criminal defendant unless the trial court determines that special circumstances warrant added security precautions).
During the guilt phase of a trial, the use of visible restraints seriously jeopardizes a defendant's right to a presumption of innocence. At the sentencing phase, capital defendants are no longer presumed innocent, but the Supreme Court still recognizes that the prejudicial effect of visible restraints is substantial. See Deck , 544 U.S. at 633, 125 S.Ct. 2007. One reason is that "the defendant's life turns on the same jury's answer to the question of future dangerousness." Marquez v. Collins , 11 F.3d 1241, 1244 (5th Cir. 1994) (emphasis in original). The use of shackles "almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community ...." Deck , 544 U.S. at 633, 125 S.Ct. 2007. The Supreme Court has explained, therefore, that "[t]he use of shackles can be a thumb on death's side of the scale." Id.
In this case, the prosecutor made Mr. Whatley's propensity for future violence a major theme in his argument for the death penalty. During closing argument, the prosecutor warned the jury that "Frederick Whatley is going to kill somebody else unless you execute him. He is going to do that just as sure as I'm standing here talking to you." This point was reiterated many times over. The jurors were told that Mr. Whatley was "dangerous," and that prison would "only make him smarter and meaner." They were twice asked to consider whether Mr. Whatley would "kill a guard if that guard [stood] between him and freedom." To make sure there were no doubts, the prosecutor answered his own rhetorical question for the jurors: "He will be a threat until the day he is executed."
*1190 II
To prove ineffective assistance of counsel, a defendant must show that his counsel's performance fell below minimum professional standards, and that there is a reasonable probability that counsel's error affected the outcome of the proceeding. See Strickland , 466 U.S. at 688, 694, 104 S.Ct. 2052. To establish a reasonable probability, Mr. Whatley does not need to show that, but for his counsel's errors, a different outcome was more likely than not. See Williams v. Taylor , 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (explaining that a defendant does not need to establish Strickland prejudice by a preponderance of the evidence). Instead, he need only establish "a probability sufficient to undermine confidence in the outcome." Strickland , 466 U.S. at 694, 104 S.Ct. 2052. Because Georgia requires a unanimous jury to impose a death sentence, we conduct the prejudice inquiry by asking whether there is a reasonable probability that one member of the jury would have returned a life sentence rather than a death sentence. See Jones v. GDCP Warden , 753 F.3d 1171, 1184 (11th Cir. 2014).
The Georgia Supreme Court assumed that trial counsel's failure to object to the visible shacking was deficient performance, but it concluded that Mr. Whatley had not established prejudice under Strickland : "In view of the balance of the evidence presented at his trial, we conclude as a matter of law that [Mr.] Whatley cannot show that his trial counsel's failure to object to his shackling in the sentencing phase in reasonable probability affected the jury's selection of a sentence." Whatley v. Terry , 284 Ga. 555, 668 S.E.2d 651, 663 (2008).
Under 28 U.S.C. § 2254(d)(1), we must defer to the Georgia Supreme Court's decision unless it "was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state court decision involves an unreasonable application of federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case ...." Williams , 529 U.S. at 407-08, 120 S.Ct. 1495. I believe that the Georgia Supreme Court's conclusion regarding prejudice involved an unreasonable application of Strickland . I am mindful that a state court decision is not unreasonable just because a federal court would have reached a different outcome, and recognize that the § 2254(d)(1) showing is a "difficult" one. See Harrington v. Richter , 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). A state court's application of federal law must be "objectively unreasonable" to warrant habeas relief. See Williams , 529 U.S. at 409, 120 S.Ct. 1495. But even giving the Georgia Supreme Court's prejudice determination the deference it is due under AEDPA, I believe Mr. Whatley is entitled to habeas relief.
A
As explained above, the Strickland prejudice inquiry requires that we ask whether counsel's error (in reasonable probability terms) affected the outcome. Because the relevant error is counsel's failure to object to the visible shackling at sentencing while Mr. Whatley re-enacted the murder, we should first ask whether the objection would have been sustained. If a timely objection would have been properly overruled, then Mr. Whatley cannot show prejudice.
A few considerations lead me to conclude that the objection would have been sustained. First, it was the prosecutor who expressed a concern about the restraints at sentencing and asked the trial court whether measures should be taken to prevent *1191 the jurors from seeing Mr. Whatley in shackles. The prosecutor told the trial court that he "was just wondering about the chains." The only response of Mr. Whatley's counsel was, "Well, he's convicted now." This exchange reveals that the prosecutor would not have opposed an objection if Mr. Whatley's counsel had raised one (and would not have requested that Mr. Whatley be in shackles, particularly given that he was planning on having him re-enact the murder in front of the jury). Second, "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." Strickland , 466 U.S. at 694, 104 S.Ct. 2052. As the Georgia Supreme Court noted, the standards governing shackling at the time, even at a sentencing hearing, strongly suggested that it was unconstitutional to shackle capital defendants in front of the jury without a showing that the particular defendant presented a security risk. See, e.g. , Moon v. State , 258 Ga. 748, 375 S.E.2d 442, 459 (1988) (citing Elledge , 823 F.2d at 1451 ). Third, the prosecutor never presented any evidence that warranted such a security measure. Proceeding on the assumption that the trial court was aware of the applicable authority at the time of the sentencing hearing, as Strickland instructs, it is reasonably probable that it would have taken measures to shield Mr. Whatley's shackles from the jury's view. For example, it could have had Mr. Whatley walk to the witness box when the jury was out of the courtroom and could have had him re-enact the crime from the witness box, where his shackles were not visible.
The Georgia Supreme Court did not base its prejudice ruling on whether or not the objection would have been successful. That is to say, it did not hold that the failure to object was not prejudicial because the trial court would have overruled such an objection. Rather, it held that, "in view of the balance of evidence presented at trial," the shackles did not affect the outcome. Whatley , 668 S.E.2d at 663. That analysis was deficient.
To decide whether a defendant was prejudiced by ineffective assistance of counsel at sentencing, we typically correct for counsel's error and "reweigh the evidence in aggravation against the totality of available mitigating evidence." Wiggins v. Smith , 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). But in the shackling context, the Supreme Court has explained that the sight of visible restraints "inevitably undermines the jury's ability to weigh accurately all relevant considerations-considerations that are often unquantifiable and elusive-when it determines whether a defendant deserves death." Deck , 544 U.S. at 633, 125 S.Ct. 2007. See also Elledge , 823 F.2d at 1450 ("[A] jury might view the shackles as first hand evidence of future dangerousness and uncontrollable behavior which if unmanageable in the courtroom may also be unmanageable in prison, leaving death as a proper decision."). The Georgia Supreme Court did not take this inherently prejudicial effect into account. Nor did it factor in the re-enactment of the murder in front of the jury or the prosecutor's dogged focus on future dangerousness. See Whatley , 668 S.E.2d at 663.
The majority, like the Georgia Supreme Court, distinguishes the Supreme Court's opinion in Deck because that case involved a due process challenge on direct appeal and not an ineffective assistance of counsel claim. This distinction, however, is one without a difference. The question for us is whether Mr. Whatley was prejudiced by *1192 being shackled during sentencing in front of the jury while he re-enacted his crime with the prosecutor (the avenging angel who later asked for death) playing the victim.
Deck speaks directly to that issue: "The appearance of the offender during the penalty phase in shackles [ ] almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community." Deck , 544 U.S. at 633, 125 S.Ct. 2007. We have recognized that reality as well. See United States v. Durham , 287 F.3d 1297, 1305 (11th Cir. 2002) ("One of the most prominent concerns about the use of most methods of restraint comes from the possibility of prejudice to the defendant if those restraints are visible to the jury."); Elledge , 823 F.2d at 1451 (stating that "[w]hen shackling occurs, it must be subjected to close judicial scrutiny," and a court must consider "whether less restrictive, less prejudicial methods of restraint were considered or could have been employed") (citations omitted). See also Stephenson v. Neal , 865 F.3d 956, 959 (7th Cir. 2017) ("The possibility that the defendant's having to wear [a visible] stun belt-for no reason, given that he had no history of acting up in a courtroom-contaminated the penalty phase of the trial persuades us to reverse the district court's denial of Stephenson's petition for habeas corpus [claiming ineffective assistance of counsel.]"); Roche v. Davis , 291 F.3d 473, 484 (7th Cir. 2002) (granting habeas relief under § 2254(d) on an ineffective assistance of counsel claim because "the extreme inherent prejudice associated with shackling," along with "the considerable mitigating evidence," established a reasonable probability that the outcome would have been different if counsel had not failed to object to shackling the defendant at sentencing).
The majority points out that I have only been able to cite two cases where a court found Strickland prejudice due to shackling. See Majority Op. at 1187-88, n.63. I concede that this case presents a somewhat unique basis for an ineffective assistance claim-where defense counsel neglected to object to his client being shackled while he was forced to re-enact the murder in front of the jury and where the prosecutor focused on future dangerousness to justify the death penalty. I would point out, however, that the majority does not cite a single case where a court concluded that the defendant was not prejudiced under comparable circumstances. It instead relies on two cases where there was no evidence that the jury ever saw the defendant in shackles. See Jones v. Secretary , 834 F.3d 1299, 1319 (11th Cir. 2016) ; Marquard v. Sec'y for Dep't of Corr. , 429 F.3d 1278, 1309 (11th Cir. 2005).
The majority claims not to "discount[ ] the effect that shacking has on a jury," and distinguishes Deck because Mr. Whatley did not raise a substantive shackling claim on direct appeal. See Majority Op. at 1187, n.62. Yet the majority sidesteps the language in Deck -and in Elledge -describing the inherent prejudice that shacking causes in this context. It is telling that the majority devotes several pages to explaining that we do not presume prejudice when the defendant challenges his shackling through an ineffective assistance claim, but devotes only one paragraph to whether there is a reasonable probability that the shackling here affected the outcome at Mr. Whatley's capital sentencing hearing.
B
Mr. Whatley's crime, like all murders, was a terrible offense which deserved severe punishment. But the question the jury faced was whether that punishment *1193 should be death-the ultimate sanction imposed by society. Although the murder was committed during an armed robbery, Mr. Whatley's criminal past was relatively minor, and he did not have a significant history of violence. He had prior convictions for forgery and simple assault, and when he was a teenager, he was convicted of a robbery in Washington D.C. for stealing one dollar.
At sentencing, the prosecutor presented evidence regarding Mr. Whatley's alleged lack of remorse. The centerpiece of the state's lack-of-remorse argument was that Mr. Whatley had expressed concern over missing the Super Bowl because he had to be in court. In response, defense counsel called mitigation witnesses to testify on Mr. Whatley's behalf. They explained that Mr. Whatley had been abandoned by his mother, that he had redeeming qualities, and that he was deserving of forgiveness.
The jury found two statutory aggravating circumstances: (1) the crime was committed while Mr. Whatley was engaged in the commission of an armed robbery; and (2) Mr. Whatley committed the crime after escaping from a place of lawful confinement (Mr. Whatley had fled from a halfway house). These statutory aggravators, while serious, are not the worst of the worst. I cannot agree with the majority that the aggravating circumstances in this case were so overwhelming that they rendered "trivial" the sight of Mr. Whatley re-enacting his crime while in chains. This is especially true given that the prosecutor repeatedly argued that Mr. Whatley's future dangerousness demanded the death penalty.
I might agree with my colleagues had the shackles merely been visible to the jury when Mr. Whatley walked to the witness box. Or if the trial court had given a curative instruction to the jury about the restraints. Or if Mr. Whatley was not forced to re-enact the murder in front of the jury while the prosecutor played the role of the victim. Or if the prosecutor had not explicitly made Mr. Whatley's future dangerousness a key theme in favor of his request for death. But prejudice under Strickland requires a holistic inquiry, and here the confluence of circumstances leaves me no doubt that there was prejudice.
In determining whether Mr. Whatley was prejudiced, the majority does not consider the circumstances under which the jury saw Mr. Whatley in shackles. That context, I think, is essential. The "concept of prejudice is defined in different ways depending on the context in which it appears," and "when a court is evaluating an ineffective-assistance claim, the ultimate inquiry must concentrate on the 'fundamental fairness of the proceeding.' " Weaver v. Massachusetts , --- U.S. ----, 137 S. Ct. 1899, 1911, 198 L.Ed.2d 420 (2017). Starting with the recognition that visible shackling is "inherently prejudicial," see Holbrook v. Flynn , 475 U.S. 560, 568, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the degree of prejudice mounts as one considers how visible the shackles were and how Mr. Whatley was forced to wear them while he re-enacted the murder. See Durham , 287 F.3d at 1305 (noting that, compared to a stun belt, "handcuffs ... are not so easily concealed, and the possibility of prejudice is more obvious in such cases"). When considered together with the prosecutor's focus on future dangerousness during closing argument, the prejudice in Strickland terms is undeniable.
III
The Georgia Supreme Court committed three errors which rendered its prejudice determination unreasonable under § 2254(d)(1). First, it did not take into account the inherently prejudicial effect of *1194 shackling in a capital case. Second, it did not consider the fact that Mr. Whatley had to re-enact the murder in front of the jury in shackles with the prosecutor playing the victim. Third, it failed to account for the prosecutor's focus on future dangerousness in asking for the death penalty. It is "reasonably probable" that at least one juror's decision was tipped in favor of death due to counsel's failure to object, and that sufficiently undermines confidence in the outcome. I would grant Mr. Whatley partial habeas relief and require the state to provide him a new sentencing hearing.